**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| IAN A. WOODS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>　　　　　Defendants. | Case No. 2:13-CV-01029-APG-NJK<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PARTY DEFENDANTS' SUMMARY JUDGMENT MOTION; (2) DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT; AND (3) REFERRING THIS CASE TO THE PRO BONO PROGRAM**<br><br>(Dkt. #36, #85) |

Defendants Aaron Brown, Daniel Tracy, Rashonda Smith, Brian Williams, Tanya Hill, Gabriela Garcia, and Jason Harris move for summary judgment on all of plaintiff Ian Woods' remaining claims against them. Woods is an inmate at the Southern Desert Correctional Center ("SDCC"). He alleges Brown, Tracy, Smith, Williams, Hill, Garcia, and Harris[1] retaliated against him for filing grievances in violation of his First Amendment rights. He also alleges defendants Williams and Harris failed to protect him from a fellow inmate who they knew was his enemy. He therefore alleges they were deliberately indifferent to his safety in violation of the Eighth Amendment.

The defendants argue there is no evidence they retaliated against Woods for filing grievances. Rather, according to defendants, the evidence shows Woods violated prison rules and regulations. The defendants also argue there is no evidence they were deliberately indifferent to

---

[1] Woods also named as defendants Brian Sandoval, Ross Miller, Cheryl Burson, L. Thompson, Timothy Filson, Espinoza, A. Roper, William Tate, Sgt. Wilson, J. Gentry, Frank Dreesen, G. Lambey, Yates, Johnson, S. Brooks, T. Carlman, and Ledingham. (Dkt. #13.) None of these defendants has appeared in this action. There is no evidence these defendants have been served with the amended complaint (Dkt. #13). I therefore will order plaintiff Woods to show cause in writing why Woods' claims against these defendants should not be dismissed for failure to serve and failure to prosecute.

Woods' personal safety because Williams and Harris did not know the other inmate posed a danger to Woods.

Woods responds that a series of incidents demonstrates defendants retaliated against him by falsely claiming he violated prison rules shortly after he filed grievances. According to Woods, once he stopped filing grievances, the defendants stopped writing him up for violations. Additionally, Woods contends Williams and Harris knew of a prior incident between Woods and another inmate, Sean Mitchell, but they failed to protect him from Mitchell, who later attacked him.

## I. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Retaliation

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A First Amendment retaliation claim has five elements. First, the plaintiff must show he engaged in

activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Filing an inmate grievance is a protected activity. *Id.*

Second, the plaintiff must show the defendants took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation." *Id.* The "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted).

"Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough. . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

Finally, the plaintiff must show that the defendant's retaliatory act "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted). To establish this element, the plaintiff must show the defendant not only acted with a retaliatory motive, but also that the defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Id.* (quotation omitted).

### 1. Defendant Daniel Tracy

On November 7, 2012, defendant Tracy did not open the door to Woods' cell to let Woods out so that Woods could attend school. (Dkt. #108 at 104.) Woods states by affidavit that he pushed his call button multiple times that day to be let out for school. (*Id.*) According to Woods, he later asked Tracy why he was not let out of his cell and Tracy responded, "I don't know who does and who doesn't go to school." (*Id.*) Woods contends this is not true because Tracy should have a call-out list showing which inmates are scheduled for school. (*Id.*) Woods filed a

1  grievance against Tracy based on this event. (Dkt. #86-9 at 2-3.)  The grievance report indicates
2  Woods was not permitted to attend class because he was 17 minutes late. (Dkt. #86-10.)
3       On June 6, 2013, Woods filed another grievance against Tracy. (Dkt. #87-7.)  Woods
4  states that he was going to the gym when Tracy called him a "whiney ass" because Woods filed
5  grievances. (Dkt. #87-8; Dkt. #108 at 179.)  Woods also states that Tracy denied him access to the
6  gym. (Dkt. #108 at 179.)
7       As to the first incident, Woods has not shown he engaged in protected activity prior to
8  Tracy not opening his cell door.  Woods does not identify any evidence showing he previously
9  filed a grievance against Tracy or that Tracy knew Woods had filed grievances against other
10 correctional officers.  He therefore cannot show any evidence raising a genuine issue of material
11 fact on the first element, that he engaged in protected activity, or on the third element of a causal
12 connection between any protected activity and Tracy's actions.  Consequently, Tracy is entitled to
13 summary judgment on this incident.
14      As to the second incident, Woods had filed a grievance against Tracy related to the first
15 incident approximately seven months prior, and he therefore has presented evidence that he
16 engaged in a protected activity.  He also has presented evidence raising an issue of fact that Tracy
17 took an adverse action against him by denying him access to the gym.  And he has presented
18 evidence raising a genuine issue of fact as to a causal connection between his protected activity
19 and the adverse action.  According to Woods, Tracy specifically made reference to Woods'
20 protected activity when Tracy called him a "whiney ass" for filing grievances.
21      However, Woods has not presented evidence raising an issue of fact that Tracy's acts
22 would chill or silence a person of ordinary firmness from future First Amendment activities.
23 Being called a name one time would not deter a person of ordinary firmness.  Nor would being
24 denied access to the gym on one occasion.  These harms are minimal. *Compare Gomez v. Vernon*,
25 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that repeated threats to transfer an inmate in
26 retaliation for his complaints about library administration were sufficient to chill); *Watison*, 668
27 F.3d at 1116 (holding officer's refusal to give inmate his breakfast sufficient to state a claim
28

because it deprived the inmate of food); *Ballard v. Warren Cnty. Detention Facility*, No. 4:07CV00964 ERW, 2008 WL 163589, at *3 (E.D. Mo. Jan. 17, 2008) (holding a one-time denial of the opportunity to purchase snacks would not chill). Consequently, Tracy is entitled to summary judgment.

### 2.  Defendants Gabriela Garcia and Tanya Hill

Woods alleges defendants Garcia and Hill retaliated against him by denying his grievances for procedural irregularities. In his opposition, Woods does not identify any evidence in relation to defendant Garcia. I will not scan the record to find a triable issue of fact on Woods' behalf. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that it is not the district court's task "to scour the record in search of a genuine issue of triable fact"). At the summary judgment stage, Woods must "identify with reasonable particularity the evidence that precludes summary judgment." *Id.* (quotation omitted). He has not done so as to defendant Garcia. I therefore grant her motion for summary judgment.

As to defendant Hill, Woods cites to a March 21, 2013 grievance he filed against Hill in which he states she finds a way to deny grievances as improper and then denies the re-filed grievances as untimely. (Dkt. #87-3.) However, in that grievance, Woods did not identify any particular grievance of his that Hill denied improperly. His unsupported grievance does not raise an issue of fact.

Woods also cites to exhibit CB1 of his motion, which is an article on the "art of frustrating grievances" by denying them for erroneous reasons. (Dkt. #108 at 56.) Even if I considered the article, it does not mention defendant Hill and does not raise an issue of fact that Hill improperly denied any of Woods' grievances.

Next, Woods cites to exhibit R56, which is Woods' February 1, 2013 grievance against Brown and Smith for stating he was too late to enter the library. (Dkt. #108 at 168.) Hill, along with a caseworker, signed the grievance denial because the grievance did not provide enough information. (*Id.*) Specifically, the caseworker asked Woods what time he arrived to request entry to the library. (*Id.*) Woods' grievance states that he "walked down the hallway" at 8:00 a.m.

and at 8:15 a.m. (*Id.* at 169.) However, it does not specifically state that he attempted to enter the library at these times. (*Id.*) This exhibit does not raise an issue of fact that Hill's conduct did not advance legitimate goals of the correctional institution. Hill and the other caseworker requested further information to evaluate Woods' claim. Woods has not raised an issue of fact that the request for further information was arbitrary or capricious. Nor does he provide any evidence that he gave Hill the requested information.

Next, Woods cites to exhibit RS17-18, which is Woods' March 1, 2013 grievance against Smith for denying him access to the law library. (Dkt. #108 at 176-77.) It is unclear from the exhibit why the grievance was not accepted. Woods therefore has not raised an issue of fact that the denial was arbitrary or capricious.

Finally, Woods presents evidence that other inmates have made similar complaints against Hill that she denies complaints for baseless reasons. Other inmates' complaints do not establish that Hill in fact engaged in that conduct, nor does her denial of other inmates' complaints raise an issue of fact that she improperly denied any of Woods' grievances.

In sum, Woods has not pointed to any evidence raising an issue of fact regarding his claim against defendant Garcia. The evidence he cites in support of his claim against defendant Hill does not raise an issue of fact that she acted arbitrarily or capriciously in denying any of his grievances. I therefore grant summary judgment in favor of defendants Garcia and Hill.

### 3. Defendant Jason Harris

Woods' retaliation claim against defendant Harris rests on two incidents. First, on June 26, 2013, Harris filed a notice of charges to initiate disciplinary action against Woods because Harris found contraband in Woods' cell. (Dkt. #87-10.) Earlier that day, another correctional officer, Ledingham, filed a notice of charges against Woods for taking extra food from culinary. (Dkt. #87-9.) Woods was later found guilty of that charge, and he admits he took the items. (*Id.*; Dkt. #108 at 178.) After Ledingham found the contraband, Harris suspected Woods might have more, so Harris searched Woods' cell. (Dkt. #88-7.) The search revealed Woods had contraband,

including unidentified prescription pills and other miscellaneous items. (*Id.*)  Harris therefore charged Woods with possession of contraband and possession of unauthorized medication. (*Id.*)

One month prior to this incident, Woods told Ledingham that Woods was the reason Harris got demoted. (Dkt. #108 at 178.) Ledingham told Harris that Woods claimed to be responsible for Harris being removed from the investigator position. (Dkt. #88-7.)  Harris denies that Woods was responsible for any change in his employment, and he denies he retaliated on this basis. (*Id.*)

Woods' retaliation claim based on this incident fails because Woods fails to raise an issue of fact that the search and notice of charges did not advance legitimate goals of the correctional institution.  Woods admits he took items from culinary.  He does not dispute that Harris found more contraband in his cell.  There is no evidence Harris's decision to search the cell for contraband was arbitrary or capricious when Woods admittedly had been caught with other contraband earlier the same day.

Second, Woods filed a grievance against Harris on September 4, 2013. (Dkt. #88-1.)  In that grievance, Woods states that Harris told Woods to stop writing frivolous grievances, that Harris has not been sued in 10 years, and that he would not lose a lawsuit. (Dkt. #108 at 98.) Harris is entitled to summary judgment with respect to this incident because there is no genuine issue of fact that Harris's comment would not deter a person of ordinary firmness.  There was no threat associated with the statement not to file grievances, other than that any such grievance or lawsuit would be fruitless because Woods's grievances were frivolous and Harris would prevail. I therefore grant Harris's motion as to Woods' retaliation claims.

### 4.  Defendant Aaron Brown

Woods details a long list of incidents with defendant Brown, beginning with an incident in June 2012 where Brown filed a notice of charges against Woods for "sagging"[2] and for leaving the area without permission. (Dkt. #86-1.)  Woods was found guilty of the charge of disobedience in relation to this incident. (*Id.*)  Woods thereafter filed a series of grievances against Brown, and

---

[2] Sagging apparently refers to wearing baggy pants. (Dkt. #108 at 82.)

Brown filed several notices of charges against Woods. Woods contends some of these notices falsified what happened or were initiated only after Brown realized Woods was the inmate involved. For example,[3] on December 3, 2012, Woods was in a meeting with his caseworker, which put him at risk of being late for one of his classes at school. (Dkt. #108 at 116.) According to Woods, another correctional officer called Brown to see if it was okay if an inmate arrived to class late due to his meeting with his caseworker, and Brown said it was fine. (*Id.*) But, Woods avers, when Brown saw the inmate in question was Woods, he refused to allow Woods into class, citing education rule #6, which provides that an inmate will be sent back to his unit and marked as absent if he is more than 15 minutes late. (*Id.*; Dkt. #86-4.) Woods filed a grievance against Brown based on this incident. (Dkt. #86-4.)

A couple of weeks later, Woods filed another grievance against Brown because, according to Woods, Brown falsely accused Woods of cursing at Brown. (Dkt. #86-6; Dkt. #108 at 109.) Woods states Brown was inside the education building when he saw Woods talking to another inmate outside the building. (Dkt. #86-6; Dkt. #108 at 109.) Brown came out of the building and told Woods that he had heard what Woods said. (Dkt. #86-6; Dkt. #108 at 109.) According to Woods, he had not been talking about Brown. (Dkt. #86-6.) He told Brown that he was not talking to Brown, and Brown stated "You can fuckin put that in your grievance." (*Id.*; Dkt. #108 at 109.) Brown filed a notice of charges against Woods for using profanity against him. (Dkt. #86-6; Dkt. #86-7.)

A little over a month later, Woods filed another grievance against Brown, alleging that Brown and defendant Rashonda Smith agreed to file false notices of charges against him. (Dkt. #86-15.) In this incident, Woods was on the call-out list to visit the law library, where Smith works, at 8:00 a.m. (*Id.*; Dkt. #86-17.) According to Woods, he was in the area at 8:00 a.m. and 8:15 a.m., but Smith had not yet opened the law library. (Dkt. #86-15.) Woods contends Smith did not let anyone into the library until 8:20 a.m., yet she filed a notice of charges against Woods

---

[3] I will not detail all of the incidents. It suffices to relate a few to demonstrate Woods has raised issues of fact that Brown retaliated against him in violation of his First Amendment rights.

1  for disobedience for failure to report to the law library at 8:00 a.m. (Dkt. #108 at 164; Dkt. #86-
2  16.) Brown also filed a notice of charges against Woods, based on Woods trying to get into the
3  law library even though he was more than 15 minutes late for his appointment there. (Dkt. #86-
4  22.)

5  That same month, Brown filed another notice of charges against Woods. (Dkt. #86-26.)
6  In this incident, Woods left one classroom at the school and attempted to enter another classroom.
7  (*Id.*) Brown confronted Woods about entering a classroom he was not authorized to enter. (*Id.*)
8  According to Brown, Woods responded that he did not care what Brown did, but he was going to
9  go back to the other classroom and get his homework. (*Id.*) Brown told Woods that he could get
10 his homework later and ordered him to go back to his assigned classroom. (*Id.*)

11 According to Woods, he tried to explain that he had permission from his teacher in his
12 assigned classroom to go to the other classroom and he was in the process of asking permission
13 from the other teacher if he could enter her classroom when Brown interrupted, but Brown would
14 not listen. (Dkt. #108 at 75.) Woods reported back to his assigned classroom. (Dkt. #86-26.)
15 Brown then spoke to the teacher in the classroom Woods had attempted to enter, and she said
16 Woods did not have permission to be there. (*Id.*)

17 Based on this notice of charges, defendant Williams expelled Woods from school. (Dkt.
18 #108 at 75, 88.) Another inmate, Kaleb Carter, avers under oath that he heard Brown and Smith
19 talking about writing up Woods and getting him removed from school, and later that day Woods
20 was expelled. (*Id.* at 89.)

21 Woods states that prior to his filing a grievance against Brown, Brown had never written
22 him up. (*Id.* at 75.) And he states that once he stopped filing grievances in June 2014, he has
23 been written up only once. (*Id.* at 101.) Finally, Woods states that when he arrived at SDCC, he
24 was classified as minimum custody, but he no longer is because of all the write-ups he has
25 received. (*Id.* at 99-100.)

26 Viewing the evidence in the light most favorable to Woods, he has raised issues of fact as
27 to whether Brown retaliated against him for filing grievances. Woods engaged in protected
28

activity when he filed multiple grievances against Brown. Brown took adverse actions against Woods by filing notices of charges against him. Woods has presented evidence from which a reasonable jury could find a causal connection between the grievances and the notices of charges, including the proximity in time between the grievances and the charges; Brown's alleged reference to Woods' grievances when he was writing Woods up for using profanity; Carter's statement that he overheard Brown and Smith agreeing to write up Woods to get him removed from school; and the circumstantial evidence that once Woods stopped writing grievances, he stopped getting charged with disciplinary infractions. Being written up for disciplinary infractions and the negative impact those infractions may have on his custody status would chill a person of ordinary firmness. *Jones v. Williams*, --- F.3d ----, 2015 WL 3916942, *8 (9th Cir. June 26, 2015) (holding that a sanction that deprived the plaintiff of "points toward program incentives" would have a chilling effect). Finally, a reasonable jury could find Brown's conduct did not advance legitimate goals of the correctional institution because, if Woods' version is accepted as true, Brown arbitrarily and capriciously charged Woods with being late and falsified charges against Woods. I therefore deny Brown's motion for summary judgment.

### 5. Defendant Rashonda Smith

For the same reasons, I deny defendant Smith's motion for summary judgment. Woods filed grievances against Brown and Smith, Smith participated in the alleged false charges for Woods allegedly failing to timely report to the library, and Carter states that he overheard Smith and Brown conspiring to get Woods removed from school. Additionally, Woods contends Smith filed another false notice of charges against him in August 2013. According to the notice of charges, Woods had a 1:00 p.m. appointment for legal mail at the law library. (Dkt. #87-12.) According to Smith, at 1:20 p.m., Woods was lingering around the law library asking law clerks for legal forms and asking them questions. (*Id.*) She told Woods to leave because he was in an unauthorized area. (*Id.*) According to the notice of charges, if an inmate's appointment is for legal mail, he cannot enter the library until directed and all he can do is pick up his mail and then leave. (*Id.*) Woods states under oath that Smith fabricated this incident because he "was not

lingering around the law library when he was standing in line waiting for [his] legal mail." (Dkt. #108 at 102.) Additionally, although it is not clear as to the timing, Woods avers that Smith said "You have not seen retaliation yet." (*Id.*) As mentioned with respect to defendant Brown, being written up on disciplinary charges would chill a person of ordinary firmness, and fabrication of charges is arbitrary and capricious. I therefore deny defendant Smith's summary judgment motion.

### 6. Defendant Brian Williams

Woods' retaliation claim against defendant Williams falls into two categories. First, Woods contends Williams kicked him out of school in retaliation for filing grievances. Second, Woods contends Williams is complicit in others retaliating against him because Williams denies his grievances.

Woods filed a grievance on February 28, 2013 against Williams and defendants Brown, Smith, and Burson, claiming these defendants retaliated against him for filing grievances by expelling him from school. (Dkt. #86-25.) Woods presents no evidence that Williams knew the charges against Woods were false or retaliatory. He therefore fails to raise an issue of fact that Williams' conduct was arbitrary and capricious, as opposed to maintaining order in the institution.

In August 2013, Woods filed a grievance stating that Williams aided retaliation that resulted in Woods accumulating 21 "yard points" at SDCC resulting in a change to his custody level. (Dkt. #87-18.) Woods fails to raise a genuine issue of material fact with respect to this grievance. Woods does not present evidence that, other than the February 2013 incident, Williams had any participation in Woods receiving "yard points."

In October 2013, Woods filed a grievance stating that Williams and Smith have been retaliating against him. (Dkt. #87-23.) Woods received a notice of charges for jumping off the second story to get to the phone. (Dkt. #87-22.) Woods admits he engaged in the charged conduct. (Dkt. #87-23.) But he states he was put in a 23-hour lockdown unit before he had been found guilty of any charges. (*Id.*) Woods presents no evidence that Williams was involved in the

decision to place Woods in lockdown, and, even if he was, that Williams' conduct was arbitrary and capricious, as opposed to an effort to maintain order in the institution.

Finally, Woods presents evidence that Williams denied Woods' grievance against Burson. (Dkt. #108 at 51.) Woods had complained that Burson improperly rejects grievances. (*Id.*) Williams denied the grievance because Woods did not explain why Burson rejected his grievance, and therefore Williams could not respond to Woods' grievance against Burson. (*Id.*) Woods presents no evidence that Williams' response was arbitrary and capricious. Woods does not, for example, present a grievance that explains to Williams why Burson denied his grievance. Woods therefore fails to raise an issue of fact that Williams' request for more information to evaluate Woods' claim was arbitrary or capricious.

In sum, Woods fails to present evidence raising an issue of fact that Williams retaliated against him for filing grievances. I therefore grant Williams' motion for summary judgment on Woods' retaliation claims.

### B. Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, prison officials have a duty "to take reasonable measures to guarantee the safety of the inmates." *Osolinski v. Kane*, 92 F.3d 934, 936-37 (9th Cir. 1996). This includes a duty to "protect inmates from violence at the hands of other inmates." *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).

To establish a claim under 42 U.S.C. § 1983 for a violation of the Eighth Amendment, the plaintiff first must show he suffered a deprivation that was "sufficiently serious" to constitute cruel and unusual punishment. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (quotation omitted). Where, as here, the Eighth Amendment violation is based on the defendant's failure to prevent harm to the plaintiff, the plaintiff may meet this element by showing "he is incarcerated under conditions posing a substantial risk of serious harm." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Second, the plaintiff must show the defendant acted with deliberate indifference, meaning the defendant knew of and disregarded that substantial risk of serious harm to the plaintiff. *Lemire*, 726 F.3d at 1074. The plaintiff does not need to show the defendant intended the plaintiff to suffer harm. *Id.* It suffices if the plaintiff shows the defendant knew of the substantial risk of serious harm and acted or failed to act. *Id.* A defendant's knowledge may be proven through circumstantial evidence or "from the very fact that the risk was obvious." *Cortez*, 776 F.3d at 1050 (quotation omitted). "Constructive notice does not suffice to prove the requisite knowledge," but it may constitute circumstantial evidence of knowledge. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).

Finally, the plaintiff must show the defendant's actions or inactions actually and proximately caused his injuries. *Lemire*, 726 F.3d at 1074. Where a plaintiff seeks to recover damages against prison officials, the causation inquiry is "individualized" and "accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988). "As a practical matter, plaintiffs who have already demonstrated a triable issue of fact as to whether prison officials exposed them to a substantial risk of harm, and who actually suffered precisely the type of harm that was foreseen, will also typically be able to demonstrate a triable issue of fact as to causation." *Lemire*, 726 F.3d at 1080-81.

On January 1, 2012, Woods saw his cell mate and another inmate, Mitchell, having sex, and Woods told other inmates what he saw. (Dkt. #108 at 62-64, 68.) Later that day, Mitchell came to Woods' cell and punched Woods in the face several times. (*Id.*) According to Woods, he notified defendants Espinoza and Harris of this fight, and he then was interviewed about the incident in May 2012 by an investigator for the Office of the Inspector General, Bonnie Howard. (*Id.* at 62-64, 78.) Woods' cell mate, Terry Bryant, states that he also told Espinoza and Harris that Woods caught him and Mitchell having sex and then Woods and Mitchell got into a fight. (*Id.* at 68.)

On June 29, 2012, Mitchell walked up to Woods and punched Woods in the face. (Dkt. #88-8.) Woods and Mitchell then started fighting. (*Id.*) Defendant Brooks filed a notice of

1  charges against Woods for fighting. (*Id.*)  Woods filed a grievance relating to this incident, stating
2  that shortly after he talked to the investigator about the January fight, Mitchell was allowed to
3  approach and attack him. (Dkt. #88-9.)  Defendant Lambey responded to the grievance by stating
4  that although Mitchell and Woods now listed each other as enemies, the entry reflecting their
5  enemy status was not made until July 5, 2012, which was after the fight. (Dkt. #88-10.)

6  Defendant Williams denies that he knew Woods and Mitchell were enemies before
7  Mitchell attacked Woods in June 2012. (Dkt. #88-11.)  Defendant Harris denies that Woods told
8  him about the January 2012 fight with Mitchell. (Dkt. #88-7.)  Rather, Harris contends Woods
9  told this information to Howard. (*Id.*)

10  Woods points to no evidence raising a genuine issue of material fact that Williams knew
11  Mitchell posed any danger to Woods prior to the June 2012 fight.  Woods does not contend he
12  told Williams about the first fight.  He does not provide any evidence contradicting the
13  defendants' evidence that Woods and Mitchell were not listed as enemies until after the second
14  fight.  Woods' interview was with investigator Howard, and there is no evidence Howard shared
15  any information with Williams prior to the second fight.  Accordingly, I grant Williams' motion
16  for summary judgment on Woods' Eighth Amendment claim.

17  As to Harris, Woods and his cell mate state they told Harris about the January 2012 fight.
18  However, there is no evidence that after the first fight, Woods told Harris: (1) that he wanted
19  Mitchell on his enemies list, (2) that Mitchell had threatened him, or (3) that he feared for his
20  safety if he came into contact with Mitchell again.  The second fight occurred approximately six
21  months later, with no specific threat to Woods' safety communicated to Harris in the meantime.
22  And, as mentioned previously, the evidence before the court shows Woods and Mitchell did not
23  list each other as enemies until after the second fight.  There is no evidence that Investigator
24  Howard shared any information with Harris prior to the second fight.  Thus, although Harris may
25  have been aware of some risk to Woods, there is no evidence raising an issue of fact that he was
26  aware of a substantial risk of serious harm to Woods. *See Berg v. Kincheloe*, 794 F.2d 457, 459
27  (9th Cir. 1986) (stating the defendant need not "believe to a moral certainty that one inmate
28

intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur." (quotation omitted)). I therefore grant Harris's motion for summary judgment on Woods' Eighth Amendment claim.[4]

### III.  CONCLUSION

IT IS THEREFORE ORDERED that defendants Aaron Brown, Daniel Tracy, Gabriela Garcia, Jason Harris, Tanya Hill, Rashonda Smith, and Brian Williams' motion for summary judgment **(Dkt. #85) is GRANTED in part and DENIED in part**. The only claims remaining for trial are plaintiff Ian Woods' First Amendment retaliation claims against defendants Aaron Brown and Rashonda Smith.

IT IS FURTHER ORDERED that defendants' motion to dismiss **(Dkt. #36) is DENIED as moot.**

IT IS FURTHER ORDERED that within 30 days of the date of this order, plaintiff Ian Woods must show cause in writing why his claims against defendants Brian Sandoval, Ross Miller, Cheryl Burson, L. Thompson, Timothy Filson, Espinoza, A. Roper, William Tate, Sgt. Wilson, J. Gentry, Frank Dreesen, G. Lambey, Yates, Johnson, S. Brooks, T. Carlman, and Ledingham should not be dismissed for failure to serve and failure to prosecute. If Woods does not show cause in writing within 30 days, his claims against those defendants will be dismissed.

IT IS FURTHER ORDERED that this case is referred to the Pilot Pro Bono Program ("Program") adopted in General Order 2014-01 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as pro bono counsel for plaintiff Ian Woods. The scope of appointment shall be for all purposes through the conclusion of trial. By referring this case to the Program, the court is not expressing an opinion as to the merits of the case.

---

[4] The defendants' summary judgment motion makes arguments on behalf of defendants for whom the Attorney General's Office has not made an appearance. (Dkt. #85 at 9, 12, & 16 (defendant Burson), 10 (defendants Roper and Lambey), 14, 16, & 20-21 (Gentry), 18 (Ledingham), 20 (Dreesen), 28 (Brooks), and 29 (Espinosa).) The defendants withdrew their arguments on behalf of Burson in their reply. I disregard all of these arguments.

1  IT IS FURTHER ORDERED that the Clerk shall also forward this order to the Pro Bono Liaison.

DATED this 10th day of September, 2015.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE